ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
BRONSON AVILA      9436
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813
Telephone:  (808) 533-7434
Facsimile:  (808) 545-3608

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THERESA KIMES, individually and as Guardian Ad Litem for her minor daughter R. K.,<br><br>    Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII DEPARTMENT OF EDUCATION,<br><br>    Defendant. | CIVIL NO. 16-00264 JMS-RLP<br><br>PLAINTIFF'S TRIAL BRIEF; CERTIFICATE OF SERVICE<br><br><br><br>Chief Judge J. Michael Seabright<br><br>Trial:   April 24, 2018 |

**PLAINTIFF'S TRIAL BRIEF**

**I.    Introduction**

Plaintiff THERESA KIMES, individually and as Guardian Ad Litem for her

minor daughter R. K., by and through her undersigned counsel, hereby submits the

following trial brief that outlines the legal framework in which the Court should

consider the evidence in this case. Specifically, the evidence presented at trial will show that Defendant STATE OF HAWAII DEPARTMENT OF EDUCATION violated § 504 of the Rehabilitation Act because R. K. was excluded from participating in, denied the benefits or services of, or subject to discrimination at Mokulele Elementary School ("Mokulele") solely by reason of her disability.

## II. Background

R. K. has multiple health and behavioral challenges, including autism spectrum disorder and epilepsy. Beginning in October 2012, R. K. attended Trumpet Academy ("Trumpet"), a school run by Trumpet Behavioral Health, which was under contract with Defendant to provide educational services to students with special needs. In the fall of 2015, R. K. began to transition to Mokulele, where eventually she was to be placed in a special education classroom.

R. K.'s challenging behaviors include aggression, self-injury, verbal threats, and the use of profanity. Cheryl Ebisui ("Ms. Ebisui")—a senior clinician for Trumpet Behavioral Health, former administrator at Trumpet, and R. K.'s behavioral specialist at Trumpet—has described these behaviors as primarily attention seeking. As a result, the staff at Trumpet reduced the amount of attention R. K. would receive for engaging in such behavior by encouraging R. K. to take short breaks away from her learning environment so that she could calm and refocus herself when necessary. Due to the nature of her disabilities, R. K.'s

Individualized Education Program provided that (1) school personnel must follow her behavior support plan and crisis plan when intervening in R. K.'s behavior, and (2) R. K. must be accompanied by a nurse to administer emergency medication for the duration of each school day.

Trumpet's Positive Behavior Support Plan Protocol, which was prepared in September 2015 and updated in February 2016, included instructions on how to react to R. K.'s verbally or physically aggressive behavior. It provided that "[R. K.'s] intensity of aggression at [Trumpet] does not warrant the use of restraint, especially when the function of her behavior is attention seeking." It further instructed that, if R. K. was not in her designated work area when the behavior occurred, staff should "NOT utilize CPI two-man transport to move her anywhere else, as this [would] reinforce the behaviors by providing the negative attention she is seeking." Finally, the protocol provided that "[a]ny attention given to . . . self-injurious behaviors and attempts should be kept to a minimum." Trumpet's Crisis Plan for the 2015-2016 school year contained similar mandates. These plans were provided to Mokulele in anticipation of R. K.'s move to the school.

On February 12, 2016, a meeting was held at Mokulele to discuss R. K.'s behavior support plan. THERESA KIMES had requested Trumpet staff be included in the meeting, but none attended. Trumpet staff told THERESA KIMES they had received no notice or invitation to attend from Mokulele staff. At the

meeting, THERESA KIMES did not agree to any changes to the behavior support plan Trumpet had been using and that the topic of restraint was not discussed. Nevertheless, following the meeting on February 12, 2016, Mokulele prepared its own Functional Behavior Assessment and Behavior Support Plan. Both documents purported to authorize the use of restraint against R. K. as a consequence for undesired behavior.

On March 10, 2016, R. K. left her classroom at Mokulele while being monitored by her Mokulele teacher and Trumpet nurse, Chelsea Gilkey ("Ms. Gilkey"). R. K. went to an outdoor stairwell where she unsuccessfully attempted to climb over the railing, and she then lay down in a safe position. Mokulele's Principal and Vice Principal grabbed R. K. by the arms and dragged her down the staircase to a grassy area where R. K. began to engage in crying and self-harm. They then grabbed R. K. by her arms and legs and carried her to the classroom where she continued to be restrained, and which provoked an episode of crying, self-harm, bleeding, and wheezing. Ms. Ebisui has opined that Mokulele's handling of R. K. as described was inappropriate given her disabilities.

The following day, Ms. Gilkey was informed that she would not be permitted on the Mokulele campus. As a result, R. K. was not provided with skilled nursing services at Mokulele on March 11, 2016.

**III.   Application of Law**

Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(b)(2)(B). "[A]lthough § 504 does not require substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals, it . . . does require reasonable modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying meaningful access to a benefit because of their disability." Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th Cir. 2008) (internal quotation marks, emphasis, and citations omitted). Thus, "[a] failure to provide reasonable accommodation can constitute discrimination under [§] 504." Id.

The Ninth Circuit has clarified that § 504 is broader than the Individuals with Disabilities in Education Act, and regulations implementing § 504 that "require qualifying public schools to 'provide a free appropriate public education [FAPE] to each qualified handicapped person,'" although similar to those under IDEA, are not identical. A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1202 (9th Cir. 2016) (quoting 34 C.F.R. § 104.33(a)). A § 504 FAPE must be "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. §

5

104.33(b)(1).  A plaintiff "may not obtain damages simply by proving that the IDEA FAPE requirements were not met." Lemahieu, 513 F.3d at 933.

Under these standards, to prevail on her claim under § 504, Plaintiff must prove the following: (1) R. K. is a qualified individual with a disability; (2) she was denied a reasonable accommodation that she needs in order to enjoy meaningful access to the benefits of a public education; and (3) Defendant receives federal financial assistance.  See Paradise Valley Sch. Dist. No. 69, 815 F.3d at 1204.  To recover damages, Plaintiff must also prove that Defendant acted intentionally, either by showing a "discriminatory animus" or "deliberate indifference."  Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d at 1204.  As Defendant has conceded that R. K. is a qualifying individual and that the HDOE receives federal financial assistance, Plaintiff must only prove the second element and the *mens rea* requirement of the § 504 claim.

> A. **Meaningful Access/Reasonable Accommodation**

As an accommodation to meaningfully access her educational benefits, R. K. required handling consistent with the behavior support and crisis plans that had been used at Trumpet.  By contrast, the behavioral support plan unilaterally drafted by Mokulele—without THERESA KIMES's consent and without input from Trumpet staff—was not designed to meet R. K.'s needs.  As recognized by the Ninth Circuit, "[t]he Rehabilitation Act creates a duty to gather sufficient

6

information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." Mark H. v. Hamamoto, 620 F.3d 1090, 1098 (9th Cir. 2010).

In this case, Mokulele staff failed to properly investigate R. K.'s needs regarding appropriate reaction to her behavioral issues by excluding Trumpet staff from the February 12, 2016 meeting and failing to discuss the use of restraint before designing Mokulele's behavioral support plan despite having received Trumpet's plans outlining R. K.'s special needs. R. K. required this accommodation in order to benefit from her education. Ms. Ebisui and THERESA KIMES will testify to the importance of refraining from using restraint upon R. K. The fact that Trumpet's plans existed is evidence that the accommodation was feasible. Testimony from Ms. Gilkey who witnessed the incident on March 10, 2016—as well as Ms. Ebisui's expert opinion based on descriptions of the incident—will show that the Mokulele plan and the use of restraint were improper. Additionally, Ms. Gilkey will testify that she was wrongfully excluded from the Mokulele campus on March 11, 2016, in violation of R. K.'s Individualized Education Program. Such evidence will prove that Defendant denied R. K. meaningful access to the benefits of a public education by denying her a reasonable accommodation.

    B.    **Deliberate Indifference**

To show deliberate indifference, Plaintiff must show that Defendant knew that a harm to a federally protected right was substantially likely and failed to act upon that likelihood.  See Hamamoto, 620 F.3d at 1099.  Plaintiff may meet this test by showing that Defendant knew a particular accommodation was needed yet failed to investigate whether the accommodation was reasonable.  Id.

In this case, Mokulele staff knew that R. K. needed specialized autism services and that R. K.'s Individualized Education Program required implementation of a behavioral support plan.  Evidence that Trumpet had included the subject accommodation in its behavioral support and crisis plans and that Trumpet had provided its plans to Mokulele supports Plaintiff's position that Defendant knew that R. K. needed this specific accommodation because of her autism.  Additionally, evidence that Mokulele did not seek input from Trumpet about its behavioral support and crisis plans or seek the input of other professionals or THERESA KIMES regarding the use of restraint with R. K. will show that Defendant failed to act upon a likelihood of harm to a federally protected right.  Finally, Defendant demonstrated deliberate indifference by excluding Ms. Gilkey from the Mokulele campus on March 11, 2016, thereby denying R. K. the skilled nursing services to which she was entitled under her Individualized Education Program in order to treat any epileptic seizures.

**IV.   Conclusion**

Based on the foregoing, the evidence presented at trial will show that Defendant violated § 504 of the Rehabilitation Act because R. K. was excluded from participating in, denied the benefits or services of, or subject to discrimination at Mokulele solely by reason of her disability.

DATED: Honolulu, Hawaii,    April 10, 2018   .

/s/ Eric A. Seitz
ERIC A. SEITZ
BRONSON AVILA

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THERESA KIMES, individually and as Guardian Ad Litem for her minor daughter R. K., <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF HAWAII DEPARTMENT OF EDUCATION, <br><br> Defendant. | CIVIL NO. 16-00264 JMS-RLP <br><br> CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date indicated below, a copy of the foregoing document was served electronically through CM/ECF on the following:

    KENDALL J. MOSER
    WILLIAM K. AWONG
    Department of the Attorney General
    425 Queen Street
    Honolulu, Hawai'i 96813

    Attorneys for Defendant

DATED:  Honolulu, Hawaii,   April 10, 2018  .

    /s/ Eric A. Seitz
    ERIC A. SEITZ
    BRONSON AVILA

    Attorneys for Plaintiff