IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THERESA KIMES, individually and as Guardian Ad Litem for her minor daughter, R.K., <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF HAWAII DEPARTMENT OF EDUCATION, <br><br> Defendant. | Civ. No. 16-00264 JMS-RLP <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL, ECF NO. 132 |
|---|---|

### ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL, ECF NO. 132

### I. INTRODUCTION

Plaintiff Theresa Kimes ("Kimes") moves for judgment as a matter of law that the Hawaii Department of Education (the "Hawaii DOE") acted with deliberate indifference in denying R.K. an accommodation that she needed in order to enjoy meaningful access to the benefits of her public education. ECF No. 132. In the alternative, she moves for a new trial. *Id*. For the following reasons, Kimes' Motion is DENIED.

## II. BACKGROUND

A. **Summary of Trial Evidence**

The following is a brief summary of the evidence presented at trial, stated in the light most favorable to upholding the verdict.

Kimes' daughter, R.K., suffers from multiple health problems, including autism, epilepsy, and asthma, and she receives special education services from the Hawaii DOE. Trial Tr. 4/24/18 ("Tr. day 1") at 4, 13-14, ECF No. 127. At all relevant times, her individual education program ("IEP") required that a behavioral support plan ("BSP") and a crisis plan ("CP") be implemented and that R.K. be accompanied by a nurse throughout her school day. *Id*. at 14, 16-21.

In 2011, R.K. began attending Trumpet Academy ("Trumpet"). *Id*. at 8. When she first enrolled there, she was nonverbal, had poor social skills, and was prone to outbursts of aggressive and self-injurious behavior. *Id*. at 8-11; *see also* Trial Tr. 4/25/18 ("Tr. day 2") at 31, ECF No. 128. Originally, her BSP and CP at Trumpet allowed Trumpet staff physically to restrain her during such outbursts. Tr. day 2 at 31-32.

Eventually, however, R.K.'s outbursts became fewer and less severe. *See id*. at 33, 35. According to Kimes,

> Trumpet found out and we found out, if you put your
> hands on [R.K.], it escalates the situation. She would
> start hitting, slapping, try to get away from the situation.
> So it would just make the problem worse. We found out,

> if you didn't put your hands on her, she would — in the
> escalation, it would go away faster, the meltdown.
> . . .
> So if you gave her the attention of the outbursts,
> whatever the tantrum was, if you interacted with her, she
> would keep going. We learned if you would ignore the
> behavior and do not interact with her, it would
> deescalate. But if you gave her any kind of eye contact,
> verbal command, it — the escalation would be worse.

Tr. day 1 at 27. Trumpet developed alternatives to restraining R.K. *Id*. at 28-29. And by September 2015, Trumpet's BSP and CP for R.K. stated: "[a]t this time [R.K.'s] intensity of aggression at [Trumpet] does not warrant the use of restraint, especially when the function of her behavior is attention-seeking." Pl.'s Exs. 4-5; *see also* Tr. day 1 at 26, 30. The plans further specified that R.K. should not be physically moved during an outburst. Pl.'s Exs. 4-5; Tr. day 1 at 26; 28, 30.

In the fall of 2015, R.K. began the process of transitioning from Trumpet to Mokulele Elementary School ("Mokulele"). Tr. day 2 at 152. Mokulele staff met with staff from Trumpet on a monthly basis during the transition period. *Id*. at 36-37, 152. Mokulele's principal, Bart Nakamoto ("Nakamoto"), and its special-education teacher, Nicole Carlson ("Carlson"), also visited Trumpet's campus. *Id*.; Trial Tr. 4/26/18 ("Tr. day 3") at 72-73. And Trumpet provided R.K.'s BSP and CP to Mokulele. Tr. day 2 at 36-37.

Desiring a plan that fit specifically the environment at Mokulele, however, Mokulele staff developed their own BSP and CP for R.K. in February

2016. *Id*. at 163; Tr. day 3 at 100; Pl.'s. Ex. 7. Unlike Trumpet's plans, Mokulele's plans provided that restraint could be used in dealing with R.K.'s outbursts. Tr. day 2 at 164-65; Pl.'s Ex. 7. Kimes testified that she did not authorize this change in R.K.'s plans, Tr. day 1 at 35, 37, but both Nakamoto's and Carlson's testimony suggested that Kimes had been involved in the process of creating Mokulele's plans and had voiced no objection to them. *See* Tr. day 2 at 166-68; Tr. day 3 at 99-100.

The incident that gave rise to this lawsuit occurred on March 10, 2016, at Mokulele. Tr. day 2 at 172. That day, R.K. had an outburst during which she left her classroom, climbed an outdoor staircase, and threatened to jump off of it. *Id*. Nakamoto and Mokulele's Vice Principal, Peter Tovey ("Tovey"), responded, first by trying to coax R.K. off of the stairs and then by physically guiding her down the staircase to a grassy area nearby. *See id*. at 106, 172-176; Tr. day 3 at 9-13. Once there, they tried unsuccessfully to calm R.K., but she continued to act out by hitting herself and running away. Tr. day 2 at 172-176, 213; Tr. day 3 at 9-13. Eventually, they restrained her by holding her arms and legs and carried her in this manner back to her classroom, where they continued to restrain her until she calmed down. Tr. day 2 at 108-111, 114-116, 172-176; Tr. day 3 at 14-17.

The following day, R.K.'s nurse, Chelsea Gilkey ("Gilkey"), accompanied R.K. on the school bus as usual, but she was not allowed on the Mokulele campus. Tr. day 2 at 138. According to Nakamoto, Carlson had become uncomfortable with Gilkey's actions at Mokulele, and he had contacted Trumpet's principal to inform her that Gilkey "would not be requested back." *Id*. at 184.

On a prior occasion when Gilkey was absent, Trumpet had supplied replacement personnel. Tr. day 3 at 109-10. When R.K. arrived at Mokulele on March 11, Carlson retrieved R.K.'s medication from Gilkey and took R.K. to the school office for the purpose of "align[ing] someone to be with [R.K.] for that day." Tr. day 3 at 111-112. Before such arrangements were made, however, R.K.'s father came to pick her up from school. *Id*. at 112.

After that day, R.K. did not attend Mokulele again. She returned to Trumpet until May, 2016, and then transitioned to a different public elementary school. Tr. day 1 at 59-60.

**B.     Procedural Background**

A four-day jury trial was held on Kimes' claim that the Hawaii DOE violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(b)(2)(B). ECF Nos. 105-08. Following the close of evidence, Kimes moved for judgment in her favor as a matter of law. ECF No. 107. The court denied that motion, *id*., and instructed the jury in relevant part as follows:

5

> In order to prevail on her claim, Plaintiff must prove each of the following elements by a preponderance of the evidence: . . . (3) the [Hawaii DOE] denied [R.K.] a reasonable accommodation that she needed in order to enjoy meaningful access to the benefits of her public education; and (4) the [Hawaii DOE] acted with deliberate indifference in denying [R.K.] such a reasonable accommodation.

Ct. Instr. 13, ECF No. 109.[1] The court explained that "[d]eliberate indifference does not require a showing of personal ill will or animosity toward the disabled student" but that it does require "more than mere negligence" and must reflect a "deliberate choice." *Id.* at Instr. 15. The court further instructed:

> To show deliberate indifference, [Kimes] must prove: (1) the [Hawaii DOE] knew that harm to a federally protected right was substantially likely. [Kimes] may prove this knowledge by showing that the [Hawaii DOE] was alerted to [R.K.'s] need for a reasonable accommodation, or the need for a reasonable accommodation was obvious and
> (2) the [Hawaii DOE] failed to act on that likelihood. Failure to act on that likelihood includes a failure to undertake a fact-specific investigation as to whether the particular accommodation is reasonable.

*Id.*[2]

///

---

[1] The parties stipulated to the existence of the first two elements: (1) the Hawaii DOE received federal financial assistance, and (2) R.K. was a qualified individual with a disability. *See* Ct. Inst. 13, ECF No. 109.

[2] Kimes did not object to these instructions.

6

The special verdict form posed the following questions to the jury:

- **Question Number 1**: Did Plaintiff prove, by a preponderance of the evidence, that the State of Hawaii Department of Education denied [R.K.] a reasonable accommodation that she needed in order to enjoy meaningful access to the benefits of her public education?

- **Question Number 2**: Did Plaintiff prove, by a preponderance of the evidence, that the State of Hawaii Department of Education acted with deliberate indifference in denying [R.K.] a reasonable accommodation that she needed in order to enjoy meaningful access to the benefits of her public education?

ECF No. 123. The jury answered "YES" to the first question and "NO" to the second, leaving the remaining questions regarding damages blank.[3] *Id*.

The court entered judgment in favor of the Hawaii DOE. ECF No. 125. And Kimes timely filed this Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial on May 23, 2018. ECF No. 132. The Hawaii DOE filed its opposition on June 7, 2018. ECF No. 136. Kimes replied on June 15, 2018. ECF No. 137. After reviewing the briefing, and pursuant to Local Rule 7.2(d), the court has determined that a hearing on Kimes' Motion is unnecessary.

---

[3] The verdict form instructed the jury to "skip the remaining questions" if it answered "NO" to question number 2. ECF No. 123 at 2.

# III. STANDARDS OF REVIEW

## A. Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a)(1), "[i]f a party has been fully heard on an issue [that is essential to its case] during a jury trial," and no reasonable jury could find in the party's favor on that issue, the court may "grant a motion for judgment as a matter of law against the party." "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion," and "the movant may file a renewed motion for judgment as a matter of law and may include an alternative . . . request for a new trial." Fed. R. Civ. P. 50 (b).

"A jury's verdict must be upheld [against a motion for judgment as a matter of law] if it is supported by substantial evidence." *Wallace v. City of S.D.*, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.* (citation and quotation signals omitted). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id.* "Judgment as a matter of law may be granted only where, so viewed, the evidence permits only one reasonable conclusion, and that conclusion is contrary to the

jury's verdict." *Id.*; *see also Harper v. City of L.A.*, 533 F.3d 2010, 1021 (9th Cir. 2008).

## B. Motion for a New Trial

A motion for a new trial is governed by Rule 59, which provides in relevant part that "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). A trial court may grant a new trial based upon insufficiency of the evidence "only if the jury's verdict was against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009); *see also EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) ("A motion [for a new trial based on insufficiency of the evidence] will be granted . . . only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." (citations and quotation signals omitted)). A new trial may not be granted "simply because the court would have arrived at a different verdict." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009); *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) (finding abuse of discretion where district court "substitute[d] [its] evaluations for those of the jurors" in ordering new trial).

9

## IV. **DISCUSSION**

The court finds no basis on which to order a judgment in favor of Kimes as a matter of law or to order a new trial. To prevail on her claim for damages under § 504, Kimes had the burden of proving that the Hawaii DOE acted with deliberate indifference in denying her a reasonable accommodation necessary for her to benefit from her public education. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

As described above, the jury was instructed that deliberate indifference required "a showing that the [Hawaii DOE] was alerted to [R.K.'s] need for a reasonable accommodation or the need for a reasonable accommodation was obvious" and that the Hawaii DOE "failed to act upon that likelihood." *See Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d at 1204 ("[D]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." (quoting *Duval v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1988) (discussing deliberate indifference in the context of 42 U.S.C. § 1983). The jury was also instructed that "[d]eliberate indifference" requires a "deliberate choice": it need not rise to the level of "personal ill will or animosity toward the disabled student," but it requires "more than mere

negligence" on the part of the school district. *See T.B. ex rel Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 469 (9th Cir. 2015); *Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d at 1207; *Mark H.*, 620 F.3d at 1099.

The jury's verdict finding no deliberate indifference is amply supported by the evidence at trial. That is, viewing the evidence in the light most favorable to upholding the verdict, the jury reasonably found that the Hawaii DOE was not deliberately indifferent to a substantial likelihood that its actions would deprive R.K. of a reasonable accommodation that she needed to benefit from her education. Rather, the evidence supported a finding that Mokulele's staff acted intending to protect R.K.'s safety and attempted to accommodate her disability — even if its actions fell short of providing all reasonable and necessary accommodations.

In her Motion, Kimes appears again to conflate the requirements of the Individuals with Disabilities in Education Act ("IDEA") and § 504 regulations, suggesting that the verdict should not stand because the evidence showed that the Hawaii DOE intentionally failed to follow R.K.'s IEP. *See* Mot. at 1. But violation of an IEP is not automatically a violation of § 504, let alone necessarily dispositive evidence of deliberate indifference. *See Kimes v. Matayoshi*, 2017 WL 4638220, at *5 (D. Haw. Oct. 16, 2017) (resolving Defendants' Motion for Summary Judgment in this case and explaining differences between a free and

appropriate education ("FAPE") under the IDEA and § 504); *see also Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008) (holding that a plaintiff "may not obtain [§ 504] damages simply by proving that the IDEA FAPE requirements were not met"). Moreover, Kimes' Motion depends on a view of the evidence more favorable to her than Rule 50 allows and ignores evidence that supports the jury's verdict.

First, Kimes contends that Mokulele administrators "deliberately and consciously decided to adopt their own BSP Crisis Plan for R.K. without consulting or including the persons from Trumpet Academy who were most informed about R.K.'s behaviors and how to control them." Mem. Supp. Mot. at 14, ECF No. 132-1. But several witnesses testified that extensive consultations between Mokulele and Trumpet staff did take place: Carlson, Nakamoto, and Cheryl Ebisui ("Ebisui"), Trumpet's Senior Clinician and School Administrator at the time, Tr. day 2 at 18, testified that Mokulele and Trumpet staff met on a monthly basis. *Id*. at 36-37, 152; Tr. day 3 at 73. Ebisui testified specifically that these monthly meetings addressed R.K.'s BSP and CP. Tr. day 2 at 36-37. And evidence showed that Mokulele staff reviewed Trumpet's records and visited Trumpet's campus to observe during the transition period. *Id*. at 36-37, 152; Tr. day 3 at 72-73. Moreover, Kimes herself was present at the February BSP meeting. Although she testified at trial that she did not realize that the meeting

12

was intended to address the BSP and that the topic of restraint did not come up, she was impeached on her first claim and contradicted by other witnesses on her second. Tr. day 1 at 60; Tr. day 2 at 10-14, 166-68; Tr. day 3 at 99-100. Given this evidence, judgment in favor of Kimes is not warranted based on Mokulele's adoption of its own BSP and Crisis Plan, its failure to invite Trumpet to the February 12 meeting, or Tovey's failure personally to review Trumpet's protocols and to consult with Trumpet staff, as Kimes contends. *See* Mem. Supp. Mot. at 14-16.

Next, Kimes argues that the manner in which Mokulele staff restrained R.K. showed deliberate indifference and that Nakamoto and Tovey "placed the needs of non-disabled students above those of R.K." by considering whether other children might witness R.K.'s behavior. Mem. Supp. Mot. at 16-17; *see* Tr. day 2 at 214. Mem. Supp. Mot. at 16. But the jury could easily infer from Tovey's and Nakamoto's testimony that they restrained her in order to protect her from serious injury and that both men acted in the manner they thought was safest at the time. *See* Tr. day 2 at 176; Tr. day 3 at 11-12, 14-19. That either of them may have considered the needs of other children in addition to R.K.'s safety, did not mandate a finding of deliberate indifference.

Kimes' next argument, based on the events of March 11, presents a closer question. She contends that Mokulele staff "chose to imperil R.K.'s well-

being by excluding Ms. Gilkey" from campus and that they "clearly knew and were not concerned that their acts would violate the explicit terms of R.K.'s 1/26/16 IEP." *Id*. But again, deliberate indifference is not shown by an IEP violation alone, and the record does not clearly or conclusively show deliberate indifference. Rather, the evidence showed that Mokulele staff took steps to secure a replacement for Gilkey and that they relied on the presence of the school nurse[4] for the short period of time that R.K. was on campus without Gilkey. Tr. day 2 at 216-18; Tr. day 3 at 111. Although the events of March 11 support the jury's finding that R.K. was denied a reasonable accommodation, and they may have allowed a finding of deliberate indifference, they did not compel such a finding, nor is the court convinced that the jury reached a "seriously erroneous result." *Pape Lift, Inc.,* 115 F.3d at 680.

Finally, Kimes argues that deliberate indifference was shown based on evidence that "Mokulele administrators suspended R.K. or sent her home from school as disciplinary actions on two occasions for behaviors that were clearly associated with her disabilities." Mem. Supp. Mot. at 19; *see* ECF Nos. 132-11 & -12; *see also* Def.'s Exs. 114-115; Tr. day 2 at 157-159, 195-196; Tr. day 3 at 89-

---

[4] There was some testimony that the school nurse was actually more appropriately described as a "health aide," but that point was not clear from the testimony. *See* Tr. day 3 at 157. Regardless, the jury's verdict is still supported by evidence that the school took steps to arrange for appropriate nursing care.

92. On these occasions, R.K. had been particularly violent toward Gilkey while at Mokulele, and R.K. was sent home for the remainder of the school day as a result. *See* Tr. day 2 at 195-96. But such action, whether characterized as discipline or not, did not compel a finding of deliberate indifference.

Not only is the jury's verdict supported by substantial evidence, it is consistent with the great weight of the evidence at trial. Thus, Kimes is not entitled to a judgment in her favor as a matter of law, nor is a new trial warranted.

## V. <u>CONCLUSION</u>

Kimes' Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 20, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kimes v. Haw. Dep't of Educ.* Civ. No. 16-00264 JMS-RLP, Order Denying Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, Motion For a New Trial, ECF No. 132